The District Court's grant of summary judgment was error both procedurally and substantively. Procedurally, the District Court erred in granting summary judgment on a ground not raised in defendant's summary judgment motion or its supporting memorandum. Namely, that the actions that we allege constituted breaches of fiduciary duties were protected by the business judgment rule in Delaware. Defendants did not make that argument in their summary judgment motion. Instead, they argued that there's no evidence at all in the record that the defendants committed the acts that we allege constituted fiduciary breaches and that the collateral estoppel doctrine barred one of our claims. In fact, nowhere in their summary judgment motion or in their 23-page supporting memorandum did they even mention the business judgment rule or the entire fairness standard. There's no mention of that whatsoever. As the Seventh Circuit held in Malhotra, a case that we cite in our reply brief, when a party moves for summary judgment on ground A, the opposing party is not required to argue ground B when that ground could have been raised by the moving party, but they chose not to. And that's exactly what we have here, Your Honors. Defendants who are represented by highly skilled counsel decided for whatever reason not to move for summary judgment on the ground that if we committed the acts that cost or alleges we did, they're protected by the business judgment rule. Instead... I take some of that, but I read their motion, their summary judgment motion, a little broader than just saying we did not intentionally suppress profits. They do say, to your point, they do say we did not intentionally suppress profits. But I think they also say, and even if we did, it was legal and fair. And they've got some quotes here. I'm curious why you think they don't basically say what I'm saying they say. Your experts do not identify a single transaction whereby money was improperly or unlawfully transferred to any SPE. So they're not saying no money was transferred. They're just saying the transfers were not improper or unlawful. They say, quote, servicing the related entities is what UIP was established to do. So there again, they're saying it wasn't, it could be read to be saying it wasn't established to make a profit. It was established to service the related entities. And then last quote here, any assertion that such transactions represent evidence of fraud or malfeasance ignores the basic structure of UIP as contemplated from its inception. Yeah. So that goes to what standard applies. Under the entire fairness standard, if that applies, it's their burden to show that everything was entirely fair. They didn't put forward evidence doing that. But the district court erroneously held that it was our burden to show under the business judgment rule that A, it didn't apply and B, it wasn't satisfied here. So that's why this standard. But isn't the business judgment rule the default? And then if you want, that's how defaults work. If you don't want it to be, if you don't want the default to be applied, the burden is on you to rebut that it's the default, that to rebut that the default is the appropriate standard. That would have been true if they had moved for summary judgment on the ground that their acts did not violate the business judgment rule. I guess that's sort of, that's what I'm saying is I think they sort of did. Those three quotes are sort of saying like these acts that you allege were not improper. They didn't violate the rules. Well, they, nowhere do they mention the business judgment rule in their supporting memorandum or the entire. So you don't often, it's often the case you don't mention the defaults. You, it's the exception to the default that you'll be expected to mention if you don't want the default to  Well, they didn't argue, they argued that there's no evidence that these acts happened. They did, but then I thought they made it in the alternative argument that even if these did happen, you know, A, B, C, not improper. This is what UIP was supposed to do. No evidence of fraud or malfeasance. Well, we were, we certainly weren't on notice that they were contending. They were certainly aware of the issue of the entire fairness rule versus the business judgment standard because in cost or one in the court of chancery before then vice chancellor McCormick got to the analysis, she spent a lot of effort on her opinion, discussing whether the entire fairness standard applied to our claim there or whether the business judgment rule applied. And she determined that the entire fairness standard applied. So we were not on notice when we prepared our lengthy opposition brief that they were contending that what we alleged that they were on both sides of these numerous transactions, that they took the position that the entire fairness standard did not apply. Had they taken that position, we would have had the obligation under rule 56 C to put forward evidence, A, that Schwartz and Bunnell were corporate fiduciaries. In other words, they were either controlling stockholders or board members, and B, that they stood on both sides of the transactions that we challenged. If we established both of those facts, then the entire fairness standard would apply. But they didn't do that. They just said, oh, this stuff didn't happen or, you know, their experts can't prove that any specific transaction was – Were you on notice from their motion? We were not. Wait. Can I finish my sentence?  Apologies. Maybe it'll still be the same answer. But were they – were you on notice that when they made the statements Judge Walker referenced, that they were saying – that they were arguing that even if we intentionally ran this not to have a profit, that decision fell within the business judgment rule? Did those three sentences he mentioned put you on notice that they were doing that alternative argument or do they simply – or did you understand them to be simply statements about and therefore it wasn't improper, it wasn't unlawful? The latter, Your Honor. We specifically know in our opposition brief at footnote seven that they hadn't raised the issue of which standard applied. And if they had, the entire fairness standard applies because we alleged that they were on both sides of the transactions. What happens if a summary judgment – the movement makes arguments that at least 98% of which clearly are simply pushing one theory here. We didn't intentionally run this to not make a profit. And then there are some ambiguous lines that could be read as consistent with that or alternative arguments. What is – what's – who has the burden of putting the court on the other side on notice? The movement does, Your Honor, under civil text, the Supreme Court opinion interpreting Rule 56. It's incumbent upon the moving party under Rule 56 to identify each of the grounds on which it's moving. Do you know what text in your appellate opening brief to our court? I don't believe so, but we certainly cited it in our reply because they invoked 56. Can you forfeit arguments that are raised for the first time in a reply? We did make the argument that the district court erred in granting summary judgment on a ground and on an issue not raised in their summary judgment motion and supporting memorandum. We clearly made that argument on our opening brief, Your Honor, but I will acknowledge that we did not cite the civil text. Can you forfeit controlling case law? I think the Supreme Court said otherwise. I actually don't know the answer to that, Your Honor. Sorry. A little bit of an odd position to imagine a summary judgment question divorced from any inquiry about the underlying legal rule. Well, I mean, the summary judgment is depends on whether there are disputed issues of material fact and the substantive law determines what's material. So, I mean, it seems odd to have a kind of law-free summary judgment motion in the way that you're attributing to your friends on the other side. I think the district court would have been entirely reasonable for the district court to rule there's a genuine issue of material fact as to which standard applies in either request supplemental briefing under Rule 56F on that issue or deny summary judgment would leave to file another one. But we certainly were on, they were taking the position as we understood their brief and I think it's any fair reading of the brief that, hey, we didn't commit these acts. So, it didn't matter which standard applied because if we didn't do these things, we have no liability regardless of which standard applies. That was certainly the thrust of their brief. They did not rely on or cite the eBay case that the district court relied upon for the proposition that it's perfectly okay under Delaware law not to run a corp in ink for profit. They did not raise that issue in their opening memorandum or in their summary judgment. You now seek to challenge some more specific actions like the interest-free loans and things of that nature. Do you think they, did they deny the existence of the loan? They denied that there was any material loan made that affected our client in any adverse way. And they couldn't deny the so-called consulting fee payments. So, that's why they moved it.  That's, I mean, but that's my point. That there are specific acts at issue and you're contesting the legal consequence of those. I just, I don't know how you do that, how one can do that without a debate about are we assessing these acts under the business judgment standard or the complete fairness standard? Well, with respect to the consulting fees, they knew they couldn't deny those. They clearly stood on both sides of those transactions. So, with respect to that one claim, that one issue, they said, oh, collateral estoppel applies because of the holding in Delaware. So, that's why they made the collateral estoppel argument because they couldn't deny that. Everything else, they said, oh, there's no evidence. Koster had to call it discovery and all these experts, but there's no evidence that we actually did these things. I thought, this is, I think Judge Katz's first question, but I wasn't sure what your answer was. A loan was made and they did not deny that a loan was made. Is that correct? There were, they denied that there was anything improper about it. That's correct. So, but they did not deny that the loans were made. Right. But they had other justifications for why it didn't cause any damages to my client, such that it would be a breach of fiduciary duty. I just had one question quickly about, just to make sure I understand the scope of the summary judgment issues for us. So, you have counts in your complaint for aiding and abetting and civil conspiracy and declaratory and injunctive relief, but you haven't challenged the district court's dismissal of those claims. You haven't argued about aiding and abetting a civil conspiracy or declaratory and injunctive relief as opposed to monetary relief going either to the corporation or to you, your  The focus of our appeal is the breach of fiduciary duty claims. That's correct, Your Honor. Okay. And then you have a number of other counts that seem to raise direct rather than derivative claims, but I haven't taken your, but tell me if I'm wrong, I have not read your brief before us as to be challenging the summary judgment as to those direct claims that you're here on the breach of fiduciary duties and derivative claims. Is that right? As a derivative claim? We believe it's both a direct and a derivative claim. Have you argued before us, my understanding of the brief before us was all about derivative claims on behalf of, um, the, the corporation and, um, we did not intend for it to read that way. We believe that, uh, my client, Mrs. Koster has direct claims against Mr, uh, Bonnell and Mr. Schwartz for preaching fiduciary duties. They owe her and their capacity is controlling stockholders and as board members. So we don't read those as derivative claims. Well, cause the other, again, I read the other side's brief to us, be arguing that you only have derivative claims. You can't have direct claims against them. And you did not, I didn't see you countering that argument in your red brief, other than to say, give us a per rata share, which really is a framework for analyzing analysis and derivative claims. Right. We didn't address that issue because the district court didn't reach it. Well, granted summary judgment on all claims, you don't, you don't still have your, is it your view that the district court did not rule on the direct claims? Not at all, your honor. So let me clarify. So the issue that we've briefed in our red brief is whether to the extent there, um, are your blue brief. I apologize. Uh, at the blue, uh, in the blue brief, to the extent there are derivative claims, uh, on which damages are ultimately awarded, whether they go, they can go directly to her, which we argue under Delaware case law. Absolutely they can under, under these facts versus, uh, to the corporation, but you didn't challenge. I guess I didn't see you challenging dismissal of your direct claims. We have the other count. I said, you think they aren't viable. You only have derivative claims, but we thought we were appealing all the entire summary judgment order. Okay. Alrighty. Um, so unless the panel has, suppose we get over the forfeiture argument that you're pressing just on the merits, how do we know that, uh, Schwart was a controlling shareholder? I mean, the it's 50, 50, the premise of one of your Delaware actions was that, um, the corporation is hopelessly deadlocked, which implies absence of control by either shareholder. Uh, under the con case that we cited at Delaware, the Supreme court case. So for the first three years and four months after Mr. Koster passed away until the stock sale on August 15th, 2018, Mr. Schwart was a 50% stockholder. My client was a 50% stockholder. However, he was chairman of the board. My client did not have a board seat. He was also CEO of the company. All the testimony in which we would have put in the record had this issue, uh, been engaged in the summary judgment motion by the defendants. He ruled UIP with an iron fist and, but now basically did what he was told by Schwart. So, you know, if we had been allowed to put in evidence, it's over, it's overwhelming that he was in fact, a controlling stockholder that, I mean, when one gets that sense from just looking at this, I didn't see a lot of evidence beyond that. And maybe that just comes back to the question of whose burden that is, right? Had they engaged on that issue by moving for summary judgment on the issue of which standard applied?  We would have put all that extensive record of evidence into the record in opposing our, uh, in opposing the summary judgment motion.  And, and I assume you would give me the roughly the same kind of answer vis-a-vis the board, which at least formally Schwart has only one vote out of three, and we don't know a whole lot about Bunnell and Cox. So the evidence, unfortunately, Mr. Cox is no longer with us. The evidence, and it's abundant in, uh, both in discovery in this case and discovery elsewhere, including Delaware and some ancillary cases, that Mr. Cox was very subordinate to Schwart and Bunnell, did whatever he was told, uh, was CFO and name only in practice. He just did, he just took instruction. He never once disagreed with anything they suggested. Um, so the evidence is very over, is powerful there as well, um, that Schwart and Bunnell following the stock sale in August of 2018. It's all of that in the summary judgment record? It's not because we didn't think we needed to put it in. So again, we're circling back to the question whose burden it was to- Right. And that highlights from our perspective, the unfairness of not being on notice that this was going to be an issue on which the district court would rule. I got it. Thanks. Okay. Thank you. Thank you very much, counsel. Thank you. May it please the court, Deborah Baum on behalf of the defendants. Mrs. Koster was the plaintiff below. She had the burden of proof. We moved for summary judgment on the principal basis as the court has noted that there was simply no evidence to support any of her theories. The default standard in fiduciary duty claims under Delaware law, the baseline, as the Delaware Supreme Court has repeatedly said, is the business judgment rule. We moved under Rule 56C for summary judgment saying there's really no evidence of any of this violation of breach of fiduciary duty. Yes, certain interest-free loans were made. They've been doing that for years between companies that basically were co-owned. And yes, they paid bonuses, consulting fees to the owners the same way they had for years. But there's no evidence of what the plaintiff had claimed to the court in seeking wide-ranging discovery of these siphoning money out of the company to the harm of its now one-third shareholder, Mrs. Koster. We said simply didn't happen. Did we say, and by the way, Your Honor, should apply the business judgment rule, which is the default standard in our moving papers? We did not. But it's the default standard. They had the burden. Go ahead. Excuse me. Sorry. I mean, it might be the default standard, but we didn't do any of the facts alleged is a different argument from if we did, it's fine under the business judgment rule. Well, I think we argued both, really. I said the primary argument was there's no evidence of any of this. And we did say there's no evidence that any of this violates Delaware law. And there's the whole collateral estoppel issue because the Delaware Supreme Court What is the this? That when you say this didn't violate, because it wasn't at all clear to me that you were arguing that even if we intentionally suppress profits in a way to prevent her, Mrs. Koster, from getting dividends or payments, that's okay under the business judgment. Where is that? Can you tell me the pages in your summary judgment brief where you argue that to the district? And Your Honor, I don't think we argued it that way. Okay. To be clear. No, I understood. You're right. Oh, please.  The plaintiff has the burden under cell attacks under Rule 56 to come forward and say, here's all the evidence as to why there is evidence of a breach of fiduciary duty. We said no evidence of a breach of fiduciary duty. She had the burden to come forward and say, here's evidence of a breach of fiduciary duty. And here's evidence of why you should apply the entire fairness standard. I understand. But let me get into the problem here, because the district court didn't say there's no dispute of material fact as to whether there was a breach of fiduciary duty. What the district court said was, I'm assuming, even if I assume you intentionally suppressed the profits, that was okay under Delaware law. Something you hadn't argued. And then said it was also okay because Mrs. Koster had a chance to invest in the SPEs. Something else that you were not arguing is a basis for summary judgment. Am I right that neither of those two grounds were argued by you for summary judgment? I think we did argue that she had not been denied any value. No, no, that's a different thing from, well, you didn't, what the district court did was, I'm assuming you intentionally suppressed profits and Delaware law allowed you to do that. If you had that intent to suppress profits, whereas your argument seemed to be, one, we didn't, there were all these profits, and two, you don't have any evidence that these transactions you don't like were designed to get you, as opposed to that was how we did things. As you just said, that's how we do things. Well, I think the court did find, Your Honor, that, and I quote, the plaintiff failed to prove that defendants ran UIP in a way that denied her value in her ownership of the company. Plaintiffs don't have to prove something in summary judgment. They just have to raise a disputed question of material fact in summary judgment. Well, I understood the court's order to be that they had not come forward with evidence, but then it did go on, the court did go. But the court needs to find no dispute of material fact. You have to look at the factual record presented by both sides. I understand your argument to be that the district court could have ruled that way, but there seems to be quite a disconnect. You're arguing one thing, they're arguing another thing. And the district court sort of said, well, I got door number three. And so that's what's very confusing to me as the problem here. Yes, well, I think part of the issue was just to give a little bit more context here. There's a very sort of far-reaching complaint. The Delaware Supreme Court en banc had ruled and said the underlying transactions that initially were the bedrock of their complaint, the Delaware Supreme Court said that didn't violate, that was not a breach of anyone's fiduciary duty. So those claims were out of it. It was not entirely clear what was left. And they went to the court and said, we think they're siphoning money out of the company and giving it to themselves, basically. We think they're all, we need discovery to be able to show you that money is going out to these individuals to the detriment of our client who's a third owner. And there were all kinds of things sort of in the background. It wasn't crystallized exactly what they were even arguing. But they went to the court and said, we want discovery of all the financials. They got bank records for the individuals, for the LLCs, the individual entities that were the owners. They got their bank records. They got ledgers of all the 12. They got to identify 12 different SPEs, different projects. Got all the records of all of them. And then came back with expert reports that didn't identify any of the kinds of things they said they thought they could find. So, yes. Your argument was they didn't have evidence of this siphoning off of money.  And they came back and said, yes, but you are running it. They came back and they're on, in response, in order. So, you've had this discovery and you guys look and go, there's no, nothing here about them siphoning money off into their own pockets. And so, then you, understandably, file a motion for summary judgment saying, there's no there there as to siphoning off money into their pockets. Correct. And they come back with their opposition. But you chose to do summary judgment on that theory. Understandably, that's the course of discovery. But the district court doesn't say that. That's the problem. The district court does not grant summary judgment on the ground that there was no dispute of material fact, genuine dispute of material fact as to this siphoning, either for self-benefit or siphoning away from Mrs. Koster. The district court instead says, assuming there is, that's fine under Delaware law, which is just a very different argument. And then the separate argument that the district court relied on, and even if you're doing this, she was offered a chance to participate in this siphoning process. Yes, she was offered the opportunity to invest in the SPEs, right? And so, those are the two things the district court ruled on, which just, I mean, it's not, this is not a you problem. This is the question here is the district court wasn't responsive to the argument that you guys were making based on the discovery record. I did, I think your honor is correct in that the district court perhaps didn't use the words, no issue of material fact in the finding. But the court said there's no evidence of this. No evidence. Not just there's not a material issue, but there's no evidence of what they're claiming here. And the siphoning off, as we've referred to it, is something different, I think, than investment in these SPEs. It's a different thing. What basically what they came to the court to say is, we think money is being taken out of the company wrongfully. Where is this no evidence statement? Which one are you referring to? Well, I think there are a number of them. In the court's opinion at page 11 of 17, I think I have a joint appendix cite to that, 2861, the court. I unfortunately have like a Westlaw version, but which I'm sorry, that's my fault. It's page 11 of the court's order. Now, I thought I had it here at the podium. I don't. But the court said, their plaintiffs failed to prove that defendants ran UIP in a way that denied her value in her ownership of the company. But then. Denying value is not the same thing as saying there's no issue of material fact as to that's denying her value. That's right. Yeah. Different question. But I can keep going. Plaintiff fails to make the case in terms of the consulting fees. Plaintiff fails to make the case that these payments were improper and resulted in a breach. She offers no proof regarding the board's knowledge and consideration of the consulting agreements. And then plaintiff has come forward with no proof about the fees other than their payment. That's at page 15, joint appendix 2865. All of this is, was, the district court did this off of the framework of saying running UIP, this is their heading, running UIP at breakeven is not a breach of fiduciary duty. Right. And then under the. If you had run it at breakeven, does your summary, do you ask for summary judgment on the ground that taking their argument at face value, running it at breakeven is consistent with fiduciary duty? Well, certainly on our reply, we did. They came back and said, but you ran it at breakeven and that's a violation of Delaware law. And we came back in our reply and said, essentially, no, it's not. We disagree. And to the extent that I heard. Because it was within business judgment rule. Well, because the entire fairness standard didn't apply. And we, they argued it. The reason the fairness doctrine doesn't apply is not an argument that something is lawful. Right. Well, we said both. We said it's lawful because it's, the Delaware courts have said it's lawful. And the business judgment rule is the default standard. And we said under eBay, and we had arguments about this in the hearing on summary judgment. I heard a lot of and read a lot in their briefs about there not being an opportunity to argue these things. The court held an extensive hearing on the motion for summary judgment. And asked specifically in the entire fairness rule, the applicability of the entire fairness rule was discussed at length. And this is a joint appendix 2892 and forward. Goes on for pages. So you were relying for your law on Henry Tratos, right? That was about Revlon duties at a sale. Yes, Ron Perlman, yes. eBay versus Newmark, which I actually think hurts. Well, I think the plaintiff relied on eBay and said you can't run a company not for profit. Right. And what I think the court correctly. What they said there. Well, it said it's a little bit nuanced, your honor. What it said was, if you're a Delaware corporation, you can't just be philanthropic period. And it said, we're not saying that you can't have corporate retreat. You can't have things for culture. There has to be a proper corporate purpose. And what if you look at it through this lens, right? You can't forego profits just because you want to do this other thing over here. And as long as you're doing it, you can do these charitable things as long as you are making value for your shareholders. But I mean, when all these SPEs make money, does that increase the value of for UIP shareholders or just for SPE shareholders? For, well, the concept and this was brief. I'm just asking a fact question. When money is made, when a decision is made to take money out of the corporation, put it into these SPEs. And let's say the SPE works out, let's say two of them work out really well and make a ton of money. Who gets that money? There's a, if I may, your honor, that's a slightly faulty premise. The money doesn't come out of the entity UIP into the SPEs. The way it works is, and this is all explained in the Delaware opinions. The concept was, and a lot of real estate companies are set up this way. The owners have their three subsidiaries, a contractor, a property manager, an asset manager. And the principals themselves invest their own money in these special purpose entities. They invest in a new project. And they typically have a big equity partner, a big lender that owns the majority of it. But the way they create value, as Mrs. Koster's late husband said and is quoted in many of these opinions as saying, the way we create value is in managing these properties, managing these investments of ours through our entities. In fact, the properties are the ones, those special purpose entities pay money to UIP for property management services, for asset management services, for construction. So I understand the structure. I want to get back to my straightforward question, okay? Yep. When an SPE makes money, does that, and let's assume maybe two of the shareholders are invested in that SPE, but not a third of UIP, okay? So that SPE makes money. Does that increase the value of the shares of UIP itself, including for those who have not invested in the SPE? Yes, it can in two ways. But in one way, if they don't invest. Yes. Not it can, did it? Yes. And that's what the court found, and that is what was briefed and held by the Delaware Supreme Court as well, which was, it was created to create value for the shareholders in A, providing them an opportunity, providing shareholders these opportunities. They source, that's what they do. That's separate. I'm just trying to understand if value over here also increases value here at UIP, because. Yes, in a second way too, because those entities, those properties are the vast majority. They do some third-party work as well, but the vast majority of the income that UIP gets through construction, through property management, they're doing property management services for these SPEs. So does it mean you're increasing value if that money keeps going out into these other investments? So. It's not going out, it's coming in. Is it, but so are they running a break-even, or does it mean they're making profits? They made, they made this much less profit. They made, I think they said in the last, whatever, six years that they had records of, or that their experts analyzed, they made about a 5.48% profit on average over that period. The industry average was 6%. So they said. I understand you definitely made that argument. Yeah, you could have made a little bit better, but. There was no, and the profits were being made. But that was a fact argument to the district court and. But the money comes in from the SPEs, from those properties for whom they provide property management services. So it's essentially, we're going out and we're sourcing one of the things that the principals did. That just sounds like the genuine dispute of material fact. You're saying no, profits were coming in. Your value was going up. Her argument is my value stayed flat. I was paid no money, no dividends or shares were distributed, nothing. That's just a, and I understand your explanation, but this sounds like a genuine dispute of material fact. Well, the court found that there was no evidence that she did not benefit from the value that was created within the entity and that there was no, under Delaware law, there was no requirement, no legal requirement that shareholder value take the form. Deprived of value is not the same thing as she wasn't paid value, right? She's not saying losing money. She's saying I'm just sitting here staying flat. District court found no deprivation of value. Right?  The district court found that there was nothing being done to deprive, well, in a breach of fiduciary duty claim, I think you do have to claim that you were damaged, that you were deprived of value. But I think she did that through, look, you were taking all this money, spending out there, all this money was being made by you guys. I'm not saying any of this is, I'm not making anything about fact findings, true or false. I'm just trying to describe my understanding of the arguments. All this money, hundreds of money was being made over here. And meanwhile, I'm sitting here flat. So that's just a different, there's just a disconnect between, I think you had your arguments understandable based on the discovery. She had hers. And then the district court just seemed to have a completely different take on it. Well, I think part of the district court's take was part of the value or the principal value that was being created here was the opportunity, sourcing opportunities to invest in these projects, real estate projects. That's why they were founded. That's only value if you have the resources to make those investments. That was her argument. I didn't have those resources. I changed my mind. I don't want to do it anymore. And so I don't have the resources to do it, whatever it is. I don't. So that's not value to her. The record did show, just to be clear, that since her husband passed, she had been paid $2.8 million in distributions from these SPEs. I think pre-existing investments by her husband. Yes, because she decided then, I don't want to do it anymore. So the question is, when you've created a company whose purpose is to source investments, to give opportunities to the principals to invest in these deals, and then the deals, in turn, create revenue for the company, do you have to change your model and not do that anymore? It's not that they were... And your argument is, well, we're going to adopt this business strategy over here that's going to not have value made in this, we'll call it the UIP, the spoke here, or the center, the hub, I guess. Instead, all the value is going to be created out here in these SPEs. For those who have the money to invest in SPEs, is that consistent with eBay versus Newmark? Well, I think it is, Your Honor, because eBay says you have to maximize value. It doesn't say you have to get every last dime. It says in a unique situation, in 2010, it's a 2010 decision, you can't run it as a non-profit in perpetuity, you can't force that on the next generation. But Trados... There's fact arguments about whether that's in fact what was going on. But Trados, three years later... A different test. That's the test for maximizing value in a sale, regardless of whether you like the way the new owner is going to run the company. But the holding... This isn't a Revlon situation. But what it talked about was the duty... What does... The question in both, really, was what does the duty of loyalty mandate in terms of maximizing value? And what Trados said was the duty of loyalty mandates that directors maximize the value of the corporation over the long term for the benefit of the providers of equity capital. Value, of course, does not just mean cash. It could mean an ownership interest in an entity, a package of other securities, or some combination with or without cash that will deliver greater value. All which are given to the corporation's shareholders, not that they have to go invest for on their own. And yeah, I'm sorry, I'm taking up a lot of time. Right, but it's an opportunity and then what the court found was there was no demonstration here, no facts here to show that she was deprived of anything. I want to continue the same general line of questioning, but take a step back the facts, whether this was losing money, breaking even, making money, whatever. I take the district court to have adopted a legal theory that it does not violate benefits for owners of a different corporation. This is not a question of defining value in some long term sense or in some expansive sense to account for, you know, feeling good about corporate philanthropy or anything like that. This is something entirely different. This is one entity can be run to benefit shareholders of a different entity, and that sounds remarkable to me. Well, it's not your run to benefit shareholders of a different entity. It's run to benefit your own shareholders by providing them opportunities through these other entities. To be clear, this- It doesn't. I think this- If UIP is designed to make as much money as possible for the owners of the SPEs, that's great if all those companies have the same owners, but they don't right now. And it has been, but they all have the opportunity. They all have the opportunity. To be clear, the Delaware Chancery Court, now Chancellor McCormick, and the Delaware Supreme Court en banc found that this was the way this company was run. And no one said, whoa, you can't do that. I mean, they had a breach of fiduciary duty claim there related to the business of this very company. They made factual findings that this was the purpose for which it was created and how it had been run for years, and there was no suggestion. There does seem to be a general comfort in the Delaware Supreme Court in this arrangement, and we're sitting in diversity. I get that. I'm a little nervous about this, but this issue was not before them. They were just focused on the fairness of the price for the third guy to buy in, Bruggen, I think, to buy into the company. Well, yes and no, Your Honor. Yes, insofar as the entire fairness talks about process for sure and value, but the way they got at value was, and the way the valuation is done in a situation like that is to look at net cash flows, and that's why the issues of these bonuses or consulting fees came up. They said, oh, they're paying out size bonus, they're doing this, and they raised the entire issue that was a big issue. I tried the case. It was there. It was a huge issue, was they're trying to run it breakeven. They're not trying to make money. That was a big issue that went into the entire fairness calculus, so it was very much front and center in the court, and they said- So your best authority for Delaware court's blessing this model are the litigation, in this case to date, and Trados? I think so. Yes. I think that's right, Your Honor, because it was, to be clear, that issue was front and center. The testimony that they cite, a lot of that was from the Delaware litigation because that question was front and center there in the entire fairness analysis. Unless the court has anything else, I thank you very much. Thank you very much, Constance.  Mr. Ross, we'll give you two minutes, please. Thank you, Your Honor. I heard my friend, Ms. Baum, say that it was our burden on summary judgment to prove our claims, and that's fundamentally the error the district court made here. It was our burden on summary judgment to prove our claims, the recycling of money and all the other things. That's not true when we're the non-moving party. Our burden is exactly what Judge Millett identified, is to show that there's a genuine issue of material fact. That's what we did in spades. Below, if you look at our opposition brief and the extensive record evidence cited in Sveta's exhibits at the summary judgment stage. If we were to go to trial, if we were permitted to go to trial, there would be abundant evidence that, although my client has received some distributions, really almost all of them in the couple years after Mr. Koster passed. She hasn't received anything material, anything above four figures, in the last six or seven years. She's had to sell her house because she doesn't have any money. The record would show, if we went to trial, that Schwad and Bunnell are very wealthy. It's because of the money they've made through the SPEs, and a function of paying themselves so-called consulting fees, even though millions of dollars in consulting fees, even though they're full-time, highly-paid UIP executives. My client hasn't received any consulting fee, any dividend, any distribution, or anything of value as a result of her one-third ownership of UIP and one-half ownership prior to the stock sale in August of 2018. Thank you. I thought you were going to ask a question, sorry. Sorry, Ms. Baum mentioned the hearing transcript, and I looked at the page, she mentioned 2894, and the district board said, well, only if it's an entire fairness review, otherwise it's your burden, and it's your burden is it not to at least show entire fairness applies. And then Ms. Koster's attorney said, well, they stand on both sides of the transaction. The court said, no, one shareholder does. It seems like you had every opportunity at the district court to, number one, you had notice that the district court was considering these issues, and number two, you had every opportunity to make an argument to the district court, and if you felt like you hadn't had an opportunity to produce evidence that would create a dispute of material fact, you had an opportunity to tell the district court, no, look, that's not what the summary judgment motion was about. We've been blindsided here. Give us an opportunity to show what we've discovered and put that, it just seems like you're telling us now you didn't have the opportunity to make the argument that I'm reading on page 2894. Well, we didn't have an opportunity to submit briefing and evidence. Did you ask for it in the hearing? The judge seems to be very, you know, telegraphing. It's going to matter to me whether it's entire fairness or whether it's business judgment. It's going to matter to me whether they stand on both sides of the transaction or whether we should view each transaction individually, and so then only one person is one-third on each side. It just seems like district court is saying, this is the opinion I'm thinking about writing, and at no point does Ms. Koster's attorney say, wait, wait, wait, wait, that's not the issue presented in the summary judgment motion. This is not fair. We didn't get notice. We didn't have an opportunity to put evidence into the record that would create a dispute of material fact. In all fairness, my recollection of that transcript is that we did make that point. So if that's, and I didn't mean to state with my last point as declarative as I did, so that was my mistake, but I didn't see it on page 2894, so that's why I'm bringing it up now. I'm asking you, if you did make that point, where? I don't have the transcript site. I, well, actually, maybe I do. So given the history of this case and how long it had been pending before the district court, it was quite clear to us that asking for additional briefing or turning the oral argument, based on the docket entry, it was clear the December 2024 proceeding was going to be oral argument on the pending summary judgment, which had been pending for a long time. It would have been very poorly received by the district court, in our view, if we'd asked to introduce exhibits. And I was just going to say that, and Ms. Baum would have been pounding the table saying this is improper. So we didn't view it as an opportunity. And asking for additional briefing, again, would have, we had appeared before the district court a number of times. It was quite obvious to us if we asked for that, we would risk alienating the district court. Fair enough. I just want to follow up on that. District court didn't end up relying on that point anyhow, because it didn't get to the are they on both sides issue. But it struck me as troubling to think of them. And what the district court said as well, in this entity, Schwatz invested. And this one, Bunnells invested. But they were, I taught your theory, the case was that they were in this together. And it's like, yeah, I'll vote for you on this one, you vote for me on this one. We are jointly invested in these, either jointly invested in the SPEs, or it was just a practice of them always supporting the other ones. If they weren't jointly in a particular SPE, they would always support that. Knowing that they would turn around and support them in their SPE. So virtually all of the SPEs, both Schwatz and Bunnell are jointly invested. Right. So that's not, there may be one legacy one, but that would be an outlier. They're almost always in one. Right. So they're definitely on both sides of the transaction, if they're then voting for it and then benefiting from it. Absolutely, Your Honor. So the district court statement was just inaccurate. Correct. I think it was talking about maybe the consulting fees. And I think... That was with respect to the consulting fees. Okay, I misunderstood that. But even then, if they're each approving each other's consulting fee, you're in the same situation, are you not? I agree 100%, Your Honor. And did you put evidence into the record that it was a quid pro quo? It was log rolling, I'll vote for yours if you vote for mine. No, we would have had to raise the issue of what standard applied. But they did not contest, in fact, they conceded the fact that the consulting fees had been made to the tune of millions of dollars. They didn't consult that they were made, which I think cuts against you because, yes, it was a crime for summary judgment. They weren't arguing about what happened. You were arguing about whether it was legal, whether it was fair. And as for whether it was legal and whether it was fair, the district court is telling you, I think that there was someone, I think that it was, what's the right phrasing here? You were saying they got together and decided to pay themselves consulting fees, sort of in the implication is it's a quid pro quo. And the court said, where's the proof of that? I mean, you can't just come in and say that. I'm quoting. And then your attorney said something here, and then the court says, only if it's an entire fairness review. Otherwise, it's your burden. It's your burden. It just seems like, I mean, it's like I'm reading the appellate briefs. It underscores the centrality of which standard applied. And we cited case law in our briefs. It's often dispositive under Delaware law, which applies. We didn't get to brief that issue. And by the time we got into the hearing and the district court was asking these questions, it was too late. There was no briefing. It was our strong sense. We thought about perhaps asking for post-hearing briefing, but we decided it would just absolutely not be well received. And the case law doesn't require it. Rule 56 doesn't require it. We were blindsided. We didn't think that the district court would rule the way it did. We were surprised when we saw that it was all business judgment rule and that we had not met our burden because we didn't see ourselves as having any burden under rule 56C other than to show that genuine issues of material fact existed on the issues, the factual issues they filed their summary judgment motion on. And we did just that. If they had raised the issue of which standard applied, absolutely we would have had a burden and we would have met that burden. Thank you very much. The directors have evidence that they were in cahoots on the consulting case. Did you get evidence of that in discovery? I scratch your back, you scratch mine. I'll get my consultant fee, you'll get yours. Well, there's record. The evidence is that they approved each other's. Can we get into the exact, you know, motivation? But, yes, the record would show that they did it consistently. And our theory is that those were UIP profits that should have been distributed equally to the shareholders. That was your legal theory. What I'm asking is do you say you had evidence at least of a pattern of them approving each other's consulting? Absolutely. But you never cited or referenced that pattern anywhere in your summary judgment briefing? We did not because it was our understanding that it was their burden under the entire fairness rule to show that those were entirely fair transactions. Well, you don't get to the entire fairness factor unless you first prove this. I think maybe it's just a court's question. You got to show that you got to come forward with evidence rebutting the business judgment rule, showing that they were, in fact, on both sides. That's why I asked. So you had evidence they were on both sides. And if you wanted to get an entire fairness land, you had to come forward with evidence saying, no, judge, they were on both sides. Well, I think the on both sides was conceded. And I want to go back to the key. On both sides? As in I got a consulting fee or one, you know, I missed the consulting fee, but now I got a consulting fee. They may have conceded that, but that they were approving these distributions for each other. To be clear. If we don't have to get into mens rea at this point or their intent, I would always consistently do it for you and you would only consistently do it for me, and that's sucking money out of UIP. I think it's important to see why isn't it a problem that you just didn't, you could have said orally to the district court judge. We have that evidence. We have that evidence. We didn't include in our brief because of this is, this is seems to be sort of a moving target for us, but should not say we have that evidence. It's deposition XYZ point the district court to it. So I want to emphasize supplemental letters on the district court saying, here's where that evidence is. If your honor looks at their summary judgment. Memorandum with respect to the consulting fee payments, which really couldn't be disputed. It couldn't really be disputed there on both sides. They focused on collateral stopping because they knew there was a problem. And then they had this argument that I think is a, it was a big stretch for multiple reasons that, well, the Delaware litigation, collateral really stops cost her from advancing that argument here. That was the focus. That's what we were prepared to discuss going into the December, 2024 oral argument on summary judgment, not whether they stood on both sides. I just, again, it underscores the fact that we were effectively your point that. Entire fairness doctrine is triggered just by showing. Or having it conceded factually that there was a pattern of them each getting these consulting fees that the third shareholder was not getting. We would have to show two things to invoke the entire fairness standard. One that they were corporate financiers, which really isn't. Aside for now, because this question was only about the, are they on both sides? And if you look in isolation at each consulting fee, there's only one shareholder on the receiving and sort of on both sides. It's on the receiving end and the voting end. But if you look at the pattern, I think whether they would call it a pattern, but whether there were X number of consulting fees for SWAT X number of consulting, she's fees for, but now that money's being paid out of UIP. Yeah. Our expert reporting fees for Mr. Coster, those are expert report. Mr. McDonald's expert report details all of that in a schedule showing the pattern. The consulting fees happened on the same date and they're different amounts because SWAT was more senior. But yes, that evidence point is that those facts were not disputed. That's correct. Is there, what I'm asking is, is there more to trigger to overcome the business judgment rule? Do you have to show intent to? No, we have to show that a, they were fiduciaries. I can use it in cahoots. Do you have to show that in cahoots to overcome the business judgment rule, or is simply a schedule of payments for two thirds of the shareholders from which the, the third shareholder is admitted is enough. That's, I just don't know this question to overcome. The answer is, as long as they're on both sides and our corporate fiduciaries, the entire fairness standard applies and it's their burden to say, no, is it a transaction by transaction question? Or is it, cause you, like I said, you could look at each transaction and go,  there's only Mr. Swat on both sides. And that one, no, I'm looking at this one. Only Mr. Bonnell is on both sides of this one. Is that how it's applied? Or is it if you show a pattern, I think it's, I think it's both. Is it, well, you got a problem with the one at a time because it just supports rights to one at a time. But if you have the pattern and the patterns, the problem, then well, the fact of dates and times, and these amounts wasn't disputed. And so you're putting it on. So the district court on the consulting fee issue focused on the, on Schwat and Bonnell's capacity as board members. And he said, the district court said, well, there's a third board member, Mr. Cox. And so, you know, if Mr. Bonnell was receiving a consulting fee, then well, Schwat and Cox approved it. It's completely different when it comes to Schwat and Bonnell's capacity as stockholders, because Cox was not a stockholder. There are only three stockholders,  Bonnell and Koster. So each time they're giving themselves what we think were profit distributions, masquerading as consulting fees, they're teaming up against the interest of my clients. My client had no say in that. There was no, there was no, your key point is they're teaming up. Yes. It might or might not be true. Yes. And I think that is certainly, I mean, as a, as a formal matter, it's still, you don't have, you don't have a majority of shareholders or a majority of the board being conflicted. And that's the importance of the entire fairness standard. If we show that they're. Don't get to the entire fairness standard until you overcome the business judgment role.  and you keep going,  they were on both sides and the district court, we're going in circles here. I feel like it doesn't go. It said, show me the proof that one,  Schwartz got X consulting fee. Mr. Bonnell was in on.  we, we cited in our summary judgment opposition, the schedule prepared by our expert,  McDonnell showing that there was this pattern. It was very consistent. And I think at trial, if it ever went there, we would have to show by a preponderance of the evidence in circumstantial evidence would be enough that, that they were in fact in cahoots now getting a smoking gun and writing. These guys are too smart to do that, but we could certainly have a jury reasonably affir infer from the pattern.  Your honor. I mean, you could look at. I bet the three of us almost always vote the same way in the cases we hear, but it's never me voting with judge Malat because she voted with me in another case or me, but I'm with judge Cassidy in another case. I think just showing that, yeah, they, they frequently voted the same doesn't show that they were log rolling. So I think Delaware law is different on this. When you complete the Delaware law, it looks askance at controlling stockholders, giving themselves what are called non-rateable benefits, monies to some of the stockholders, but not others, which is exactly what you have here. And the Delaware case. It says just a pattern like this. Sure. Yeah. You don't need to show intentional got log rolling or scratching each other's back or I'll do it for you. You do it for me. Again, because that intent to exclude the third shareholder, you just, the pattern is enough. I would, I don't have a specific case saying that because this is kind of an unusual fact pattern. But yes, I think we, again, we go back to showing by preponderance the evidence that there was this cooperation as evidenced by the pattern and the fact that cost her never got anything in the way of a customer. And you'd say she also wasn't getting, she didn't even know about these. Right. Well, right. She also wasn't getting, she didn't have viable SPS. She wasn't getting all these, I guess, in context of the whole picture you want to present to Jerry, you would say that Jerry could then look at this pattern and find that. That's exactly right. Your honor. And that pattern was in your summary judgment opposition. Certainly. Yes. We decided to, or you decided to the expert. Yes. Yes, we did. I thought you said the table was in there or that was a scheduler table. It was in your opposition. Oh, yeah. It was cited and it was our statement of material facts. We cite to it. I think it's about the one 19 range and our, our individual statement, the numerator statement of fact. Now, if they had pulled cost her about these consulting fee payments and she approved it, obviously there'd be no claim or there were some other shareholders that, that were informed, reasonably informed and approved. Maybe it would be okay. But when you have a situation where two stockholders are giving themselves millions of dollars and one stockholder doesn't even know about it. And it's not getting the same monies. That's not okay. Under Delaware law. Did your complaint alleged that the Nella was a controlling stockholder? No, we did not. Did you argue that at summary judgment that he was, we argued in our summary judge in opposition that Schwann and Bonnell, all the fiduciary duties to cost. I'm asking a smaller question than that. Did you argue in your summary judgment opposition that aha, now we have the evidence. Bonnell was also by himself, a controlling stockholder. We argue that he had fiduciary duties to cost her as a controlling stockholder. Yes. So you argue he was controlling stockholder. We said that explicitly in the summary judgment opposition. I was wondering why you're not saying yes to my question. Yes. We argued he was a controlling stockholder. You asked whether we asserted that at a complaint. And then I said, and then I said, at summary judgment, did you say, aha, now we have the evidence. He's a control. Yeah. My, my answer was going to be too long winded, but it's succinctly. It's yes. Thanks. All right. Thank you. All right. Thank you very much counsel. The case is submitted.
judges: Millett; Katsas; Walker